1 **BARTHEL & BARTHEL, APC**
Nicholas Barthel, Esq. (319105)
2 nick@barthelbarthel.com
2173 Salk Ave., Ste. 250
3 Carlsbad, CA 92008
4 Telephone: (760) 259-0033
Facsimile: (760) 536-9010
5

6 *Attorney for Plaintiff*
*Tara Barrett*
7

8
## UNITED STATES DISTRICT COURT
9
## CENTRAL DISTRICT OF CALIFORNIA
10

| TARA BARRETT, | Case No.: |
|---|---|
| Plaintiff, | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:** |
| v. | |
| HYSEN-JOHNSON FORD INC; EQUIFAX INFORMATION SERVICES, LLC ; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; CAPITAL ONE BANK (USA) N.A.; ALLY FINANCIAL INC; FLAGSHIP CREDIT ACCEPTANCE LLC; JPMORGAN CHASE BANK, N.A.; WELLS FARGO BANK, N.A., | I. **FAIR CREDIT REPORTING ACT; AND** II. **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT;** **JURY TRIAL DEMANDED** |
| Defendants. | |

CASE NO.: *Barrett v. Hysen-Johnson Ford, Inc., et al.*
**COMPLAINT**

# INTRODUCTION

1. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy.

2. Congress designed the FCRA to preserve the consumer's right to privacy by safeguarding the confidentiality of the information maintained by the consumer reporting agencies. Congress stated in the opening section of the FCRA that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

3. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

4. Congress has chosen to protect the consumer's right to privacy by prohibiting any release of consumer reports unless the release is for one of the permissible purposes listed in 15 U.S.C. § 1681b. 15 U.S.C. § 1681b(f) in turn provides "[a] person shall not use or obtain a consumer report for any purpose unless – (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section."

5. The permissible purposes listed in 1681b usually arise only in connection with transactions initiated by the consumer. *See* 15 U.S.C. § 1681b(a)(3)(A)-(F).

//
//

| CASE NO.: | 1 OF 15 | *Barrett v. Hysen-Johnson Ford, Inc., et al.* |

**COMPLAINT**



6. In the context of a car dealership, the dealership cannot pull a consumer report until there is a concrete consumer transaction that is occurring. Merely asking for prices and test-driving vehicles is not sufficient of a relationship for a car dealership to pull a consumer report. FEDERAL TRADE COMM'N, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations*, at 45-48 (2011), https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf

7. TARA BARRETT ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of HYSEN-JOHNSON FORD INC ("Perry Ford") CAPITAL ONE BANK (USA) N.A. ("Capitol One"); ALLY FINANCIAL INC ("Ally"); FLAGSHIP CREDIT ACCEPTANCE LLC ("Flagship"), JPMORGAN CHASE BANK, N.A. ("Chase"); and WELLS FARGO BANK, N.A. ("Wells Fargo") with regard to their unauthorized pull of Plaintiff's credit report without a permissible purpose.

8. Furthermore, after being put on notice that their pull was impermissible, they continued to refusal to remove the erroneous hard inquiry that substantially decreased Plaintiff's credit score.

9. Similarly, EQUIFAX INFORMATION SERVICES, LLC ("Equifax"); EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"); TRANS UNION LLC; ("Trans Union"); (collectively "Credit Bureaus") continued to report this inquiry without first performing a reasonable investigation into Plaintiff's dispute that the hard inquiries were an impermissible pull.

10. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a Plaintiff, or to a Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

11. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

12. Unless otherwise stated, all the conduct engaged in by Defendants took place in California.

13. Any violations by each Defendant were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

14. Unless otherwise indicated, the use of a Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named.

## JURISDICTION AND VENUE

15. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 due to federal causes of action under 15 U.S.C. § 1681; and, 28 U.S.C. § 1367 for supplemental state claims.

16. This action arises out of Defendants' violations of Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*. ("FCRA"), and the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1, *et seq*. ("CCCRAA").

17. Because Defendants conduct business within the State of California, personal jurisdiction is established.

18. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in San Luis Obispo; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

## PARTIES

19. Plaintiff is a natural person who resides in San Luis Obispo County, California, from whom an impermissible of Plaintiff's consumer report occurred.

20. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c); and, Cal. Civ. Code § 1785.3(c).

21. Perry Ford is a car dealership with its principal address in Poway, California.

22. Chase is a bank operating out of New York.

23. Ally is a bank operating out of Michigan.

24. Flagship is a financer operating out of Pennsylvania.

25. Wells Fargo is a bank operating out of San Francisco.

26. Capital One is a bank headquartered in Virginia.

27. Perry Ford, Chase, Ally, Flagship, Wells Fargo and Capital One are each a furnisher of information as contemplated by FCRA sections 1681s-2(b), that regularly and in the ordinary course of business furnish information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

28. Equifax is a corporation located in the Fulton County, Georgia.

29. Experian is a corporation located in the Orange County, California.

30. Transunion is a corporation located in the Cook County, Illinois.

31. Credit Bureaus are each a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f); and, a "consumer credit reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

32. Defendants are also each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j).

33. The causes of action herein pertain to Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(d) and 15 U.S.C § 1681(d), in that inaccurate representations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a



factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

### FACTUAL ALLEGATIONS

34. At all times relevant, Plaintiff is an individual residing within the State of California.

35. Sometime before February 19, 2022, Plaintiff noticed that she was reaching the limit of miles on her leased car with Ford finance and she wanted to know if she could increase her miles, enter another lease, or purchase a new car from Ford.

36. Plaintiff called Ford finance to get some guidance on what her best option was. Unfortunately, Ford's finance department notified Plaintiff that she had to go into a physical Ford location to discuss her options with sales staff and that Ford Finance would not discuss options on the phone.

37. On February 19, 2022, Plaintiff drove to the nearest Ford dealership, which was Ford Perry, San Luis Obispo.

38. When Plaintiff first got there, Plaintiff drove around the lot looking at new cars, but the inventory in the car lot was very low.

39. A sales representative then came up to Plaintiff and began asking her questions. Plaintiff informed this salesperson that the mileage on her lease was running out soon and that she wanted to know what her options were.

40. The salesperson then showed Plaintiff a car that she test drove. However, Plaintiff did not like this car.

41. The salesperson then suggested that they go to his office to discuss options further.

42. Once in the salesperson's office, the salesperson asked for Plaintiff's name, address and SSN.

//



43. Plaintiff believed that this salesperson was creating a sales profile since Plaintiff had never picked out any cars or even decide if she wanted to purchase or lease a vehicle from Ford.

44. At this time Plaintiff had never discussed or even alluded to purchasing a particular car; Plaintiff never discussed a purchase price on any car; but instead, Plaintiff stated that she was not interested in anything that Perry Ford had in their current inventory.

45. At no time did this salesperson ask for Plaintiff's consent to pull her consumer report or inform her in any other way that this is what the salesperson intended to use her information for.

46. In fact, when the salesperson got up to leave the room to obtain the report, Plaintiff was confused as to why this individual was leaving and just assumed the salesperson must have to ask someone else about Plaintiff's available options.

47. When this salesperson came back with Plaintiff's report, this was the first time that Plaintiff realized why this individual was asking for her Social Security Number and other detailed information. However, Plaintiff still believed at that time that it must have been a soft pull since Plaintiff did not give any consent for the report to be pulled, she was not of the understanding that this is what the salesperson was doing, and she had not picked any vehicle for purchase or lease.

48. Plaintiff did not believe, and had no reason to believe, that Perry Ford was going to pull her full consumer report and shop it around to Ally, Wells Fargo, Capital One, Chase, and Flagship.

49. Perry Ford did not have a permissible purpose to pull the February 19, 2022 inquiry. Thus, Perry Ford's hard inquiry was unauthorized and illegal pursuant to 15 U.S.C. § 1681b.

//

50. Similarly, Ally, Wells Fargo, Capital One, Chase, and Flagship also violated under 15 U.S.C. § 1681b when each of them pulled Plaintiff's credit report without a permissible purpose.

51. Plaintiff was shocked when she saw seven hard inquiries appear in her Experian account.

52. Plaintiff then checked her TransUnion and Equifax credit reports and found hard inquiries on each of these reports as well.

53. When Plaintiff realized that Perry Ford had performed hard inquiries and also shopped around Plaintiff's information to several financing companies, Plaintiff was frustrated and angry.

54. On March 29, 2022, Plaintiff submitted an online dispute to Equifax demanding that it remove the hard inquiries from Capital One and Flagship. In each of these online disputes, Plaintiff clearly states that "I didn't give this company authorization to access my credit report for this reason".

55. On March 30, 2022, Plaintiff mailed dispute letters to Equifax, Experian, Trans Union and Perry Ford. In each of these certified letters Plaintiff explained that she did not authorize to have her credit report pulled and disseminated to five different finance companies. Plaintiff also clarified that all these inquiries stemmed from Perry Ford San Luis Obispo's initial unauthorized pull.

56. On information and belief, the Credit Bureaus received these written disputes shortly thereafter and notified Perry Ford, Chase, Ally, Flagship, Wells Fargo and Capital One of the disputes.

57. Perry Ford, Chase, Ally, Flagship, Wells Fargo and Capital One were then required to conduct a reasonable reinvestigation into these specific accounts on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681s-2(b)(1)(A).

58. The Credit Bureaus were also required to conduct their own reasonable reinvestigation into this specific account on Plaintiff's consumer report pursuant

1. to 15 U.S.C. §1681i.
59. On March 29, 2022, Equifax gave an irrelevant response generally stating that "INQUIRIES ARE A FACTUAL RECORD OF FILE ACCESS AND WILL REMAIN ON THE EQUIFAX CREDIT FILE TWO YEARS FROM THE REPORTED DATE OF THE INQUIRY."
60. Similarly, on April 6, 2022, TransUnion responded by explaining what an inquiry is and then stating that "If you believe that an inquiry on your credit report was made without permissible purpose, then you may wish to contact the creditor directly, by phone or in writing, regarding its purpose."
61. In effect, instead of doing a reasonable investigation as required, Equifax and TransUnion just pushed the issue back on the Plaintiff to investigate and plead her case with the creditors directly.
62. Experian did not respond to Plaintiff's dispute at all.
63. Despite receipt of Plaintiff's disputes, Perry Ford; Chase; Ally; Flagship; Wells Fargo; Capital One and the Credit Bureaus continued inaccurately report the hard inquiries that were the result of an impermissible pull.
64. On or about April 4, 2022, Plaintiff sent dispute letters to Flagship, Wells Fargo, and Capital One.
65. Again, these letters detailed that Perry Ford did not have a permissible purpose to pull Plaintiff's credit report.
66. Capital One and Flagship sent letters to Plaintiff stating that they believed they had cause to pull her credit report.
67. Yet, on May 18, 2022, Plaintiff spoke with a representative at Flagship that stated they would be removing the inquiry from her credit report because Perry Ford did not have a permissible purpose. Despite this, Flagship's hard inquiry remains on Plaintiff's credit report as of today.

//



68. On May 16 and May 18, Plaintiff received communication from Wells Fargo stating that "we reached out to the dealership, Perry Ford Auto Group and they confirmed the credit application was submitted in error."
69. Wells Fargo then submitted documents so that the credit report was removed from Plaintiff's credit report.
70. Plaintiff has also sent a dispute letter directly to Chase. However, Chase refuses to remove the unauthorized pull of Plaintiff's credit report.
71. To date, Perry Ford, Chase, Ally, Flagship, and Capital One's inaccurate credit reporting remains on the Plaintiff's credit reports.
72. The Credit Bureaus did not provide notice to Plaintiff that Plaintiff's dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3).
73. Defendants' investigations were unreasonable.
74. More specifically, Perry Ford, Chase, Ally, Flagship and Capital One should have discovered from their own records, including Plaintiff's formal dispute, that the information being reported was inaccurate and materially misleading since Plaintiff provided information showing that she did not authorize the credit pulls and Perry Ford did not have a permissible purpose.
75. Plaintiff contends that it was unreasonable for Defendants to not contact Plaintiff for further information if needed and to not contact Perry Ford.
76. The unreasonableness of these investigations is further established by the fact that Wells Fargo independently concluded that the credit pull was impermissible and removed the item from Plaintiff's credit reports.
77. Accordingly, Perry Ford, Chase, Ally, Flagship, and Capital One failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) by failing to remove all of the disputed and incorrect information.

//

78. Perry Ford, Chase, Ally, Flagship, and Capital One failed to review all relevant information provided by Plaintiff in the dispute to the Credit Bureaus, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

79. Due to Perry Ford, Chase, Ally, Flagship, and Capital One's failure to reasonably investigate, Perry Ford, Chase, Ally, Flagship, and Capital One further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

80. By inaccurately reporting account information after notice and confirmation of its errors, Perry Ford, Chase, Ally, Flagship, and Capital One failed to take appropriate measures as required by 15 U.S.C. § 1681s-2(b)(1)(D); and, (E).

81. Through this conduct, Perry Ford, Chase, Ally, Flagship and Capital One violated Cal. Civ. Code § 1785.25(a) by furnishing information to consumer reporting agencies that Perry Ford, Chase, Ally, Flagship and Capital One knew or should know was inaccurate.

82. Credit Bureaus also failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. §1681i.

83. The Credit Bureaus mere recitation of what a hard inquiry is completely missed the mark on what Plaintiff was disputing.

84. Plaintiff's continued efforts to correct Defendants' erroneous and negative reporting were fruitless.

85. Defendants continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was willful.

86. Defendants continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was reckless.

87. Defendants' failure to correct the previously admitted inaccuracies on Plaintiff's credit reports was intentional and in reckless disregard of Defendants' duty to refrain from reporting inaccurate information.

88. Accordingly, Defendants willfully and negligently failed to comply with Defendants' respective duties to reasonably investigate Plaintiff's dispute.

89. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.

90. In fact, Plaintiff was denied several loans due to "too many inquiries" on Plaintiff's credit report.

91. Defendants' conduct has caused Plaintiff non-economic damages.

92. Plaintiff has spent countless hours disputing this inaccurate information with Defendants in an attempt to provide any and all information needed for the investigations.

93. While Plaintiff was thorough in Plaintiff's disputes at all times, each Defendant merely responded with form letters that failed to take into account any of the specifics identified in Plaintiff's disputes.

94. Plaintiff's anxiety; frustration; stress; lack of sleep; nervousness; anger; and, embarrassment continues to this day because Plaintiff worked so hard to build her credit and all of these inquiries in one day substantially set back Plaintiff.

95. Plaintiff has sought credit several times since Defendants' erroneous reporting, and Plaintiff has been denied each time due to "too many inquiries".

96. Despite Plaintiff's repeated attempts, Defendants continue to report invalid credit inquiries to Plaintiff's credit report.

97. As a direct and proximate result of Defendants' willful action and inaction, Plaintiff has suffered actual damages, including, but not limited to, reviewing credit reports, preparing and mailing dispute letters, attorneys' fees, loss of credit, loss of ability to purchase and benefit from credit, mental and emotional



pain and anguish, and humiliation and embarrassment of credit denials. Plaintiff has further spent countless hours and suffered pecuniary loss in attempting to correct Defendants' inaccurate and derogatory information, without success.

98. Based upon the discussion above, Plaintiff contends that punitive damages are available to Plaintiff.

99. Similarly, Credit Bureaus also received documents in connection with Plaintiff's dispute that directly contradicted the inaccurate credit reporting.

100. These documents should have caused these Credit Bureaus to remove the inaccurate information from Plaintiff's credit report.

101. By intentionally reporting these inquiries, the Credit Bureaus acted in conscious disregard for Plaintiff's rights.

102. To report this inquiry despite the fraudulent nature of the inquiry shows that Defendants took action involving an unjustifiably high risk of harm that was either known or so obvious that it should be known.

103. Since Plaintiff's efforts to be absolved of the fraudulent debts were unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's remaining disputes.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF
## COUNT I
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. §§ 1681-1681X (FCRA)
## [AGAINST ALL DEFENDANTS]

104. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

105. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

//



106. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from each Defendant.

107. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100 and not more than $1,000 and such amount as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant.

## COUNT II
## VIOLATION OF THE CALIFORNIA CONSUMER
## CREDIT REPORTING AGENCIES ACT
## CAL. CIV. CODE § 1785.1, ET SEQ.
## [AGAINST PERRY FORD; CHASE; ALLY; FLAGSHIP; AND CAPITAL ONE]

108. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

109. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

110. In the regular course of its business operations, Perry Ford, Chase, Ally, Flagship and Capital One routinely furnishes information to credit reporting agencies pertaining to transactions their consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

111. Because Perry Ford, Chase, Ally, Flagship and Capital One are each a partnership, corporation, association, or other entity, and are therefore each a



"person" as that term is defined by Cal. Civ. Code § 1785.3(j), Perry Ford, Chase, Ally, Flagship and Capital One are and always were obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a).

112. Since Perry Ford, Chase, Ally, Flagship and Capital One received all documents required to determine the inaccuracy of their reporting, they should have known to update said reporting.

113. This is further supported by the fact that Wells Fargo corrected its reporting when it investigated Plaintiff's dispute.

114. Perry Ford, Chase, Ally, Flagship and Capital One also should have determined that their reporting was inaccurate through review of their own account notes and records; and, as a result of the information provided with Plaintiff's disputes.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered against each Defendant for:

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), for each incident of willful noncompliance of the FCRA;
- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), for each incident of willful noncompliance to the FCRA;
- An award for costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), for each incident of negligent noncompliance of the FCRA;
- An award of actual damages in an amount to be determined at trial pursuant

- to 15 U.S.C. § 1681o(a)(1) for each incident of negligent noncompliance of the FCRA;
- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) for each incident of noncompliance of the FCRA;
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against each named Defendant individually;
- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d) against each named Defendant individually;
- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);
- Punitive damages according to proof as to the FCRA; and, CCCRAA;
- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b); and,
- Any and all other relief the Court deems just and proper.

## TRIAL BY JURY

115. Pursuant to the United States' Constitution, Plaintiff is entitled to, and demands, a trial by jury.

Dated: September 13, 2022                                    Respectfully submitted,

**BARTHEL & BARTHEL, APC**

By: _/s/ Nicholas R. Barthel_
NICHOLAS R. BARTHEL, ESQ.
ATTORNEY FOR PLAINTIFF

CASE NO.:                            15 OF 15         *Barrett v. Hysen-Johnson Ford, Inc., et al.*
                                    **COMPLAINT**